### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**LOUIE M. SCHEXNAYDER, JR.**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 99-0093**

**N. BURL CAIN, WARDEN**                          **SECTION: "B"(5)**

### <u>REPORT AND RECOMMENDATION</u>

This matter was referred to the undersigned for further consideration after the case was reopened on Louie Schexnayder's Rule 60(b) motion for relief.[1]    In order to properly consider the matter, the Court first recites a brief overview of the case.

### Trial

This case began in 1994 when a grand jury issued a bill of indictment charging Louie Schexnayder, Jr. and co-perpetrator Dennis Morales with second-degree murder.[2]    The first trial of the co-defendants ended in a mistrial.    The defendants were then granted a severance and tried separately.    The following facts were adduced at Schexnayder's second trial, as summarized by the Louisiana Fifth Circuit on direct appeal:

> On the night of October 24, 1994, Arthur Williams and his girlfriend, Diane Bush, were on the front porch of their home in Kenner. At about 10:20, they saw a neighbor, Eugene Price, walking down the street on his way home. Both Williams and Bush testified that Price appeared to be intoxicated. Williams suggested to Bush that she go inside and put on her shoes so they could walk to a friend's house. Ms. Bush complied.
>
> Williams testified that Price reached the sidewalk in front of his house when a car drove by at a high rate of speed. The car stopped short, and backed up until

---

[1]  Rec. Doc. 60.

[2]  State Rec., Vol. 1 of 11, Grand Jury Indictment.

it was next to Price. Defendant, whom Williams knew by sight, exited the car and walked around the back toward Price. The car's passenger, whom Williams recognized as Dennis Morales, remained in the vehicle.

Williams testified that defendant approached Price, addressed some profanities to him, and appeared to punch him in the chest. In an attempt to deter further violence, Williams left the porch and confronted defendant. Defendant turned toward Williams in a threatening manner, then got back in the car and drove away.

Williams approached Price, saw that he was bleeding, and realized he had been stabbed. Price continued to walk for a distance of three or four houses before he collapsed. Williams called out to a neighbor to call 911.

Ms. Bush, who returned to the porch in time to witness the entire incident, testified that she was unable to see the perpetrator's face. She went to Price's mother-in-law's house nearby in search of help, but there was no answer when she knocked on the door. Williams and Bush sought the help of another neighbor, a nurse, who went to assist Price. Price later died from his injuries.

When officers with the Kenner Police Department arrived at the scene of the murder, Williams gave them descriptions of the two perpetrators. Williams also described the car as a brown or tan older model Oldsmobile, possibly a Delta 88 or 98. While at the scene, Detective Mark Ortiz saw a car some distance away traveling at a slow speed with its headlights off. When the car turned in the direction of Veterans Boulevard, Ortiz noted that it fit the description given by Williams. Ortiz, along with Detective Keith Pepitone, went in an unmarked police unit to search for the car.

Later, the detectives spotted the car in an area known as University City, where Williams had told them one of the perpetrators lived. The officers followed the car to the eastbound Loyola Drive entrance ramp to Interstate 10. The officers turned on flashing lights, alerting the suspects to pull over. Defendant, who was driving the car, complied. The officers ordered defendant and Morales out of the car. Both men were patted down for weapons, but none were found. The officers also detained a female passenger, Tiffany Rickman.

Ms. Rickman testified at trial that she had been in defendant's car only five minutes before the officers stopped them, and knew nothing of the murder. She stated that when the two men became aware that they were being followed by police, she heard one of them tell the other to "get rid of it." She did not, however, see them dispose of anything.

Detective Pepitone contacted Detective Bill Murrett, who was still at the murder scene, and asked that he transport Mr. Williams to Loyola Drive to make a possible identification. Murrett took Williams in an unmarked police car to the location where defendant and Morales had been apprehended. While still sitting in Murrett's car, Williams made spontaneous identifications of defendant's car and of defendant and Morales. Defendant and Morales were placed under arrest. Ms. Rickman and Mr. Williams were transported to the police station for further questioning.

The officers searched the area around defendant's car for the murder weapon, but were not able to find anything of evidentiary value. Police impounded defendant's car and obtained a search warrant for it, but no evidence was seized during the subsequent search.[3]

Schexnayder's second jury trial held in July 1995 resulted in a guilty verdict.[4]    His *pro se* and counseled motions for new trial were denied.    On October 5, 1995, he was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[5]

## Direct Appeal

On direct appeal, Schexnayder raised nine assignments of error, which included: (1) the trial court erred in refusing to allow him to exercise a peremptory challenge during jury selection; (2) the trial court erred in denying his motion to quash that asserted the State deprived him of access to evidence and prejudiced him by impounding and destroying his vehicle; (3) the trial court erred in allowing the State to introduce statements made by co-

---

[3]  *State v. Schexnayder*, 96-KA-98 (La. App. 5 Cir. 11/26/96), 685 So.2d 357.

[4]  State Rec., Vol. 1 of 11, R.p. 113, Verdict Sheet.

[5]  State Rec., Vol. 1 of 11, Commitment.

defendant Morales during a telephone call to Joann Romano; (4) the trial court erred in allowing testimony by state witness Quinton Tobor pertaining to co-defendant Morales; (5) he was deprived of the right to confront and cross-examine state witness Arthur Williams; (6) the trial court erred in restricting his ability to cross-examine Williams about a prior conviction; (7) the trial court erred in denying his objection to the prosecutor's improper remarks during closing argument; (8) the trial court erred in denying his *pro se* motion for new trial; and (9) ineffective assistance of counsel.[6]    The court of appeal affirmed his conviction and sentence.    On May 16, 1997, the Louisiana Supreme Court denied his application for a writ of certiorari.[7]    On October 6, 1997, his petition for writ of certiorari was denied by the United States Supreme Court.[8]    The Supreme Court denied his request for a rehearing.

### State Post-Conviction Relief

On or about February 5, 1998, he filed an application for post-conviction relief in the state district court.[9]    In that application, he asserted 13 issues for review:    (1) the state courts violated his constitutional rights by denying him access to his transcripts; (2) the

---

[6]  *State v. Schexnayder*, 96-KA-98 (La. App. 5 Cir. 11/26/95), 685 So2d 357; State Rec., Vol. 8 of 11.

[7]  *State v. Schexnayder*, 97-KO-0067 (La. 5/16/97), 693 So.2d 796; State Rec., Vol. 8 of 11.

[8]  *Schexnayder v. Louisiana*, 522 U.S. 839 (1997).

[9]  State Rec., Vol. 8 of 11, Uniform Application for Post-Conviction Relief (attached to Louisiana Supreme Court Writ No. 98-KH-1460).

evidence was insufficient to convict him; (3) he was denied effective assistance of counsel on 17 different factual grounds; (4) the trial court erred in denying his motion to suppress the identification; (5) he was denied a pretrial line-up; (6) he was denied the right to testify on his own behalf at trial; (7) the trial court denied his request for self-representation; (8) he was denied his right to effective pretrial counsel when the trial court appointed stand-in counsel to represent him on a motion to dismiss trial counsel; (9) he was denied his right to effective pretrial counsel when the trial court appointed stand-in counsel to represent him on his *pro se* motion to quash based on conspiracy, double jeopardy and ineffective assistance of counsel; (10) the trial court erred in denying his *pro se* motion to suppress evidence; (11) the trial court violated his right to conflict-free counsel in denying his request for new counsel; (12) the trial court erred in denying his motion to quash based on conspiracy, double jeopardy and ineffective assistance of counsel following the mistrial; and (13) the trial court erred in denying his motion for new trial based on newly discovered evidence and ineffective assistance of counsel.    On April 15, 1998, the state district court summarily denied his application for post-conviction relief.[10]    On May 11, 1998, the Louisiana Fifth Circuit summarily denied his related supervisory writ application.[11]    On October 30, 1998, the Louisiana Supreme Court denied relief without stated reasons.[12]

---

[10]  *Id.*, District Court Order denying PCR, 4/15/98.

[11]  *Id.*, *State v. Schexnayder*, 98-KH-466 (La. App. 5 Cir. 5/11/98).

[12]  *Id.*, *State v. Schexnayder*, 98-KH-1460 (La. 10/30/98), 723 So.2d 971.

**Federal Habeas Proceedings**

In 1999, Schexnayder filed a federal application for habeas relief.    As set forth in this Court's prior report and recommendation, his exhausted claims included:

1. There was insufficient evidence to convict him of second-degree murder.

2. The trial court improperly admitted the allegedly suggestive identification of Schexnayder by Arthur Williams.

3. The trial court improperly admitted Morales' statement to Joanne Romano, Schexnayder's girlfriend, which violated Schexnayder's right to confront witnesses.

4. The trial court improperly admitted the testimony of Mr. Tobor regarding Schexnayder's possession of a knife.

5. The trial court placed unconstitutional restrictions on Schexnayder's cross-examination of the eyewitness to the incident.

6. The trial court should have dismissed the charges because the State failed to preserve his vehicle which would have been used as impeachment evidence.

7. The trial court failed to rule on Schexnayder's motion to proceed *pro se*.

8. Schexnayder was denied access to the courts because he was not afforded a copy of the transcript and court records to aid in the preparation of his appeal and post-conviction applications.

9. His trial counsel was ineffective in handling his motion to quash, motion to dismiss, motion to suppress, motion for new trial and because he had a conflict of interest, refused to let him testify and failed to ensure his participation in a line-up.

It was also determined, *sua sponte*, upon review by the magistrate judge that nine other ineffective-assistance-of-trial counsel claims raised by Schexnayder were technically procedurally defaulted because he had not presented them specifically to the state's highest court.    These included the following:

1. His counsel provided ineffective assistance because he failed to object to the indictment's accuracy.

2. His counsel failed to research the validity of the defendant's prior arrest and convictions so as to advise him of whether he should take the stand during the criminal trial.

3. His counsel failed to subpoena his drug test.

4. His counsel failed to investigate the employer of Arthur Williams.

5. His counsel failed to subpoena the police vehicle registration to show that he never owned a Cadillac.

6. His counsel failed to impeach the state's witnesses' credibility.

7. His counsel failed to object to the lies and misstatements by the prosecution.

8. His counsel failed to subpoena witnesses.

9. His counsel erred by making statements regarding his personal opinion during closing argument.

The magistrate judge allowed him an opportunity to address the exhaustion issue directly.[13]    Schexnayder argued that he had, in fact, exhausted the claims fully by presenting them to all of the state courts, including specifically the Louisiana Supreme Court. After considering the evidence submitted, the magistrate judge denied relief finding the latter ineffective-assistance claims unexhausted and procedurally defaulted, and rejecting the remaining claims on the merits.    On April 14, 2000, the district judge overruled Schexnayder's written objections, adopted the magistrate's report and recommendation and

---

[13]  Rec. Docs. 14, 15.

issued an order and judgment dismissing his application.[14]    His requests for a certificate of appealability were denied.[15]

### Rule 60(b) Motion for Relief from Judgment and *Cordero*

In November 2012, Schexnayder filed a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure.[16]    He argued that he was entitled to relief because he had "never received judicial review by the State of Louisiana of his direct appeal or any application for post-conviction relief in well over 18 years at no fault of his own, denying him access to courts, due process and equal protection of law."[17]    His argument was premised on the Louisiana Supreme Court's *Cordero* ruling.    *State v. Cordero*, 08-1717 (La. 10/3/08), 993 So.2d 203.

In *Cordero*, the Louisiana Supreme Court adopted a resolution of the Louisiana Fifth Circuit Court of Appeal requesting that a number of habeas applications denied by the circuit court between February 8, 1994 and May 21, 2007, be remanded.    The Louisiana Supreme Court explained that applications denied by the intermediate court during that time-period may be tainted due to an unjust policy that was in effect, which effectively circumvented the requirement that all state habeas petitions be heard before a three-judge panel.    Thus, the Louisiana Supreme Court remanded all of the state habeas petitions that had been denied

---

[14]    Rec. Doc. 18.

[15]    Rec. Docs. 20, 21.

[16]    Rec. Doc. 22, Independent Action for Relief from Judgment Rule 60(b).

[17]    *Id.* at p. 1.

during the above-referenced time frame to the Louisiana Fifth Circuit for reconsideration. Schexnayder's state writ applications were among those reviewed again under *Cordero*. On February 18, 2011, the Louisiana Fifth Circuit issued a new opinion once again denying relief on 11 *pro se* writ applications Schexnayder had filed with the circuit court between February 8, 1994 and May 21, 2007.[18]    His related supervisory writ application to the Louisiana Supreme Court was denied without additional stated reasons.[19]

This Court denied his Rule 60(b) motion, finding that it was an impermissible successive habeas petition over which the court lacked jurisdiction, rather than a true 60(b) motion for relief.    The Court also denied his Rule 59(e) motion to alter or amend the judgment.[20]    Schexnayder successfully appealed the ruling on his 60(b) motion.    After briefing and oral argument, the United States Fifth Circuit Court of Appeals vacated the order denying the Rule 60(b) motion and remanded to the district court for further proceedings. The Fifth Circuit reasoned, "[b]ecause the federal court has not considered constitutional claims related to the decisions of the Louisiana courts after the Louisiana Supreme Court's judgment in *State v. Cordero*, 993 So.2d 203 (La. 2008), the present motion is not successive,

---

[18]    Rec. Doc. 22-2 at 70-85 and 22-3 at 1-3, *Schexnayder v. State*, 08-WR-915 C/W 09-KH-159 (La. App. 5 Cir. 2/18/11).    Many of these prior writ rulings pertained to writs for mandamus relief that he filed with the Louisiana Fifth Circuit.

[19]    *State ex rel. Schexnayder v. State*, 2011-KH-0541 (La. 3/2/12), 83 So.3d 1037, *reconsideration denied* (La. 4/27/12); State Rec., Vol. 10 of 11; *see also* Rec. Doc. 22-3 at 4-5.

[20]    Rec. Docs. 26, 29.

but is a true Rule 60(b) motion entitled to be decided."[21]

Following supplemental briefing, the Senior District Judge issued an Order granting the Rule 60(b) motion under subsection (6), citing the extraordinary circumstances of the *Cordero* decision.    The Senior District Judge referred the § 2254 petition to the Magistrate Judge for further proceedings and a report and recommendation in light of the subsequent review by the Louisiana Fifth Circuit and the Louisiana Supreme Court after *Cordero*.[22]

### Supplemental § 2254 Petition

Schexnayder, through counsel, moved to amend or correct the Order and Reasons under Federal Rule of Civil Procedure 59(e), arguing that "the instruction to the Magistrate Judge to review the § 2254 petition is not consistent with the granting of the Rule 60(b) motion because that § 2254 petition predated the Louisiana Court of Appeal's post-*Cordero* ruling in this case."[23]    Counsel on his behalf argued that the state courts' reconsideration under *Cordero* resulted in the need to consider any errors contained in the 2011 Louisiana Fifth Circuit opinion *and* reconsideration of the original claims raised in Schexnayder's federal application for habeas relief.    Schexnayder's counsel recognized that the district court's order and instructions on remand did not envision this expansive review.    The district court denied Schexnayder's motion to amend as unnecessary and allowed him to submit a motion for leave to file a supplemental § 2254 petition along with a proposed

---

[21] *Schexnayder v. Vannoy*, 643 F. Appx. 417 (5th Cir. 2016); Rec. Doc. 48 at 2.

[22] Rec. Doc. 60.

[23] Rec. Doc. 64-1.

petition to the Magistrate Judge.[24]    The undersigned granted Schexnayder leave to file his supplemental petition.[25]    The State filed a response.[26]    Schexnayder filed a reply.[27]

In his supplemental federal application, he presents several additional grounds for relief.    The first he frames as a "*Cordero* issue," in essence arguing that the 2011 reconsidered ruling by the Louisiana Fifth Circuit is invalid and denied him due process because of the inherent judicial bias and inequity in those proceedings.    As a result, he contends he is entitled to de novo review of all claims for relief, rather than deferential review based upon the state court's "invalid" ruling.    He also claims he was denied a copy of his trial transcript and a meaningful appeal.    Finally, he claims that Jefferson Parish used a discriminatory process for selecting grand jury forepersons, and ineffective assistance of counsel for failing to file a pretrial motion to quash the indictment based on grand jury foreperson discrimination.    The State does not argue that any claims raised in the supplemental petition are untimely, but contends the *Cordero* issue is unexhausted and not cognizable on federal habeas review regardless.    The State further submits the claims regarding his trial transcript and ineffective assistance of counsel are meritless, and the remaining claim of discrimination in the selection of jury forepersons is procedurally defaulted.    In his reply, Schexnayder moves to strike the State's response as untimely filed.

---

[24]  Rec. Doc. 67.

[25]  Rec. Doc. 75.

[26]  Rec. Doc. 81.

[27]  Rec. Doc. 84.

However, the Court finds the response was timely filed in accordance with the deadlines imposed.[28]    Alternatively, he argues that he has fully exhausted his *Cordero* claim, that he has shown cause through ineffective assistance of counsel for his procedural default of the discrimination claim to be excused, and that the claims raised in his supplemental petition warrant relief.

## Analysis

On the record presented, Schexnayder is not entitled to a federal evidentiary hearing.[29]    28 U.S.C. § 2254(e)(2).    Further, the Court notes that Rule 60(b) may not be used to advance a "claim" that is, in effect, a successive habeas petition.    Thus, construing the referral order in the context of the law relative to Rule 60(b) motions—insofar as true 60(b) motions attack the integrity of the federal habeas proceeding, *see Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005), as was determined here given the events that gave rise to *Cordero*—the undersigned doubts that Schexnayder's newly asserted claims for relief in his supplemental petition were included under the 60(b) grant of relief in these reopened

---

[28]    The State was granted an extension until the 30th of September, which happened to fall on a Saturday.    The response was timely filed on Monday, October 2.

[29]    Schexnayder does not identify what evidence should be presented at an evidentiary hearing.    Furthermore, this Court's discretion to allow new evidence on habeas review is clearly limited.    *See Cullen v. Pinholster*, 563 U.S. 170, 185, 131 S. Ct. 1388, 179 L.Ed. 2d 557 (2011) ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").    *Id.* at 181.    As the Supreme Court noted, "[i]t would be contrary to [the federal habeas scheme affording primary review with the state courts] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and review by that court in the first instance effectively *de novo*."    *Id.* at 181-83.

proceedings.   However, due to the unique nature and complexity of these proceedings, which date back to 1999, the Court will nevertheless address the new claims raised in the supplemental petition out an abundance of caution.

As a preliminary matter, the Court addresses Schexnayder's arguments pertaining to the applicable standard of review.   This matter is intertwined with his first supplemental claim for relief alleging the denial of procedural due process during reconsideration of his writ applications on state-court collateral review after *Cordero*.   He is essentially challenging the Louisiana Supreme Court's resolution in *State v. Cordero* (citing the dissent), remanding all of the state habeas petitions that had been denied during the relevant time frame to the Louisiana Fifth Circuit for reconsideration.   In fashioning the resolution, the Supreme Court stated:

> We have also received from the Fifth Circuit Court of Appeal an en banc resolution unanimously adopted by that court on September 9, 2008, recommending that this Court transfer all of these applications to the court of appeal for random allotment to a panel of three judges drawn from five judges on that court, Chehardy, McManus, Wicker, Guidry, JJ., and Jasmine, Pro Tem. The en banc resolution also sets out internal procedures designed to promote completely independent review by the randomly-selected panels. Therefore, in accordance with the Resolution of the Fifth Circuit Court of Appeal en banc, the application of Sandra Cordero is herewith transferred to the Fifth Circuit Court of Appeal for consideration according to the procedures outlined in the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008. These three-judge panels are to be insulated from all persons, other than the panel judges and their respective personal staffs. This Court also determines that the applications presently filed and pending in this Court by petitioners, raising similar claims and enumerated hereinabove should also be handled in accordance with the procedures outlined in this Order and the Fifth Circuit Court of Appeal's en banc resolution of September 9, 2008.

Schexnayder contends no fair review could ever be had upon reconsideration of writ

applications in the very same court of appeal that had created the problem initially and then devised a plan to solve that problem because each judge on the Louisiana Fifth Circuit had an interest in upholding those prior rulings.    Ironically, he benefitted from the very decision he now seeks to invalidate, *i.e.*, the one that afforded him the right to reopen his federal habeas proceedings.    Nonetheless, his reason for making this argument is clear. Based on his rationale, he urges the Court to review all of his claims *anew*—those presented in his original petition and in his supplemental petition—*without any deference* to the state-court rulings.[30]

The parties disagree as to whether the due-process claim was properly exhausted given the unique manner in which it arose.    However, even if unexhausted, this Court may exercise its discretion to review and deny the claim on the merits.    28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). And as the State correctly argues, the claim should be denied because it is not cognizable on federal habeas review.    To the extent Schexnayder is attempting to assert a federal due-process claim related to the state court's actions or rulings on collateral review, such an alleged error falls outside the scope of federal habeas review.    Clearly, this challenge is based on his perceived infirmities in the state-court collateral-review proceedings. However, "[i]t is well-settled that 'infirmities in state habeas proceedings do not constitute grounds for federal habeas relief.'"    *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003)

---

[30]    Rec. Doc. 84, Reply at 3-4.

(quoting *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)); *see also Kinsel v. Cain*, 647 F.3d 265, 273 (5th Cir. 2011).   An attack on a state post-conviction proceeding does not entitle a petitioner to federal habeas relief with respect to his conviction because it "is an attack on a proceeding collateral to the detention and not the detention itself."   *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987).   Thus, his claim related to purported infirmities during the collateral-review process does not warrant federal habeas relief.

Nor is Schexnayder entitled to de novo review of his claims for relief.   It is clear that Title 28 U.S.C. § 2254(d)(1) and (2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review in this case for pure questions of fact, pure questions of law, and mixed questions of fact and law.   A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").   With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases

where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

A.  *Claims Raised on Direct Appeal*

Although Schexnayder seeks review of all claims raised in his original federal application, four of the claims included in that application were raised on direct appeal. Those claims were designated as exhausted claims C-F in the original report and recommendation.[31]    In his Rule 60(b) motion, he asserted that his direct appeal "is also 'highly suspect' as three of the judges that issued the opinion, Edward A. Dufresne, H. Charles Gaudin and Sol Gothard were present and a part of the *en banc* meeting held February 8, 1994 that devised the discriminatory practices directed against *pro se* indigent defendants."[32]    However, the claims he raised on direct appeal need not be revisited on a Rule 60(b) motion for relief that resulted from defects in the Louisiana Fifth Circuit's handling of state-court writ applications during *collateral review* proceedings.    Indeed the Louisiana Fifth Circuit did not even reconsider those appellate claims as part of its *Cordero* review.[33]    Consequently, the Court's prior rulings as to these four claims were not impacted

---

[31]  Rec. Doc. 16 at 6.

[32]  Rec. Doc. 22 at 7.

[33]  Rec. Doc. 22-2 at 78, 83 (declining to consider issues raised on direct appeal).

in any manner and will not be reviewed.

B. *Claims Raised in Supplemental Petition*

Schexnayder claims the state court's refusal to provide him a free copy of his trial transcript for direct appeal and collateral review denied him due process.     This claim was raised in his original federal application, designated as exhausted Claim H.     The state courts of appeal denied the claim again upon reconsideration.     Schexnayder disputes the following analysis, and specifically the state-law citation, used by the state court of appeal in denying relief:

> Relator, who was represented by counsel on appeal, was not entitled to a free copy of the entire trial record for his review. *State v. Gilbert*, 286 So.2d 345, 349 (La. 1973) (indigent defendant entitled to free transcript when grounds for appeal establish a "colorable need" for a complete transcript). It should also be noted that relator filed a *pro se* brief on appeal, which was reviewed by this Court on appeal. Based on our current analysis, we conclude there was no error in this Court's previous ruling on relator's Writ No. 96-KH-488.[34]

This Court must defer to the state-court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."     28 U.S.C. § 2254(d)(1).     Schexnayder has made no such showing.

Regarding the constitutional right to trial transcripts for appellate review, the United States Fifth Circuit has explained:

> In *Griffin v. Illinois*, 351 U.S. 12, 19–20, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that the Due Process and Equal Protection clauses of the Fourteenth Amendment require that states provide indigent defendants with

---

[34] Rec. Doc. 22-2 at 70-85, *Schexnayder v. State of Louisiana*, 08-WR-915 C/W 09-KH-159 (La. App. 5 Cir. Feb. 18, 2011) (unpublished writ decision).

> a trial transcript free of charge when it is necessary for meaningful appellate review. However, the state is not "obligated to automatically supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir.1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). "[N]or is the state required to furnish complete transcripts so that the defendants ... may conduct 'fishing expeditions' to seek out possible errors at trial." *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir.1982).

*Kunkle v. Dretke*, 352 F.3d 980, 985-86 (5th Cir. 2003).    When Schexnayder requested a copy of the trial transcript, he was represented by appointed counsel on direct appeal.    His counsel was provided a copy of the trial transcript and had filed an appellate brief on his behalf.    The brief filed by counsel reflects extensive citation to the trial-court record.[35] Schexnayder requested an additional free copy of the record so that he could prepare a *pro se* supplemental appellate brief.    That request for an additional free trial transcript was denied because he was not entitled to multiple free copies of the record, and that ruling was upheld on supervisory writ applications to the state appellate courts.[36]    Similar claims have been rejected by federal habeas courts where a petitioner asserted he was entitled to a copy of the transcript for purposes of preparing a *pro se* appellate brief even though he was represented by counsel.    *See*, *e.g.*, *Pamilton v. Warden*, *Avoyelles Correctional Center*, 11-cv-1433, 2014 WL 4629669, at *9-10 (W.D. La. Sep. 14, 2014) (citing *Rosado v. Unger*, 2012 WL 5871607, at *9-10 (S.D.N.Y. May 4, 2012), *report and recommendation adopted*, 2012 WL

---

[35]  State Rec., Vol. 8 of 11.

[36]  *See* State Rec., Vol. 6 of 11, *State v. Schexnayder*, 96-KH-488 (La. App. 5 Cir. Jun. 19, 1996).    Upon reconsideration, the Louisiana Fifth Circuit found no error in this previous ruling.

5871606 (S.D.N.Y. Nov. 20, 2012) ("*Griffin* did not entitle Petitioner to an additional copy of the transcript [for purposes of preparing a *pro se* supplemental brief] when it was available to Petitioner's assigned counsel")).    Here, a copy of the trial record was provided and made available to Schexnayder through his appointed counsel.    He was undoubtedly able to seek meaningful appellate review through briefing by counsel and by filing his own *pro se* brief. Furthermore, as this Court noted in its original report and recommendation, he has not shown that he ever requested a copy of the record from counsel or that such a request, if made, was refused.

Additionally, there is no general due-process right of access to state-court records on collateral review in criminal proceedings.    *See, e.g., United States v. MacCollom*, 426 U.S. 317, 323-24 (1976) (no constitutional right to transcripts on collateral review of a conviction; a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts); *Deem v. Devasto*, 140 F. Appx. 574, 575 (5th Cir. 2005); *Cook v. Cain*, 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015).    An indigent criminal defendant does not have an absolute right under federal law to a copy of trial transcripts or other record documents in connection with post-conviction or other collateral review proceedings.    *See Yates v. Collins*, 988 F.2d 1210 (5th Cir. 1993) (indigent defendant not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim) (citing *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973) (affirming the lower court's finding

that there was no constitutional violation where the petitioner's attorney had access to the state-court record and trial transcripts on direct appeal and where "the petitioner did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial")). Given the voluminous filings Schexnayder accomplished in the state courts, the record tends to contradict any assertion that he was precluded access to the state courts to raise claims on collateral review. For these reasons, the claim is without merit.

Schexnayder also raises two related claims regarding discriminatory grand-jury foreman selection practices in Jefferson Parish. He argues the practice used at the time of his case discriminated against African-Americans, and that his counsel failed to file a pretrial motion to quash the indictment based on this discrimination. Notably, Schexnayder did not raise these claims in his original federal application for relief. He asserts them for the first time in his supplemental petition based on the Louisiana Fifth Circuit's reconsideration of his state-court writ application No. 01-KH-990. The State has not objected to the inclusion of these new claims for relief. Rather, in response the State argues that the discriminatory-practice claim was found procedurally barred in the state courts and thus is procedurally defaulted in this Court, and the ineffective assistance claim lacks merit. The State is correct.

Upon reconsideration, the Louisiana Fifth Circuit found that Schexnayder failed to file a motion to quash the indictment and thus waived the claim for lack of a contemporaneous objection pursuant to Louisiana Code of Criminal Procedure article 841. The Louisiana Supreme Court denied his related writ application without additional reasons.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state-law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal-court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. Federal review is barred even if the state court alternatively addresses the merits. *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Harris*, 489 U.S. at 264 n.10).

Here, the state-court ruling was based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review. Louisiana Code of Criminal Procedure article 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). The ruling was independent of federal law and based strictly on state

procedural requirements.    *See Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The failure to preserve a claim under Louisiana Code of Criminal Procedure article 841 has also been repeatedly recognized as an adequate state ground which bars review by the federal courts in a habeas corpus proceeding.    *See Toney v. Cain*, 24 F.3d 240, 1994 WL 243453, at *2 (5th Cir. May 20, 1994) (Table, Text in Westlaw); *Procter v. Butler*, 831 F.2d 1251, 1253 (5th Cir. 1987); *Riggins v. Butler*, 705 F. Supp. 1205, 1208 (E.D. La. 1989); *Marshall v. Cain*, No. 04-219, 2006 WL 2414073, at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation); *accord*, *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright*, 433 U.S. at 87-88 (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claim)).

A federal habeas petitioner may be afforded federal review of a procedurally defaulted claim only if he demonstrates "cause" for his default and "prejudice attributed thereto," or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."    *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos*, 61 F.3d at 338–39 (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989) and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).    Schexnayder has demonstrated neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).    Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not

reasonably available to counsel, and ineffective assistance of counsel.    *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992).

Schexnayder argues that counsel's ineffective assistance in failing to make the necessary objection to preserve the claim establishes cause for his default.    When using ineffective assistance of counsel to excuse procedural default of another independent claim, counsel must have been so wholly deficient as to violate a petitioner's Sixth Amendment right.    *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray*, 477 U.S. at 488–89). A habeas petitioner who alleges ineffective assistance of counsel must affirmatively demonstrate both that (1) his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial.    *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    As the state courts concluded, however, no prejudice can be shown under the circumstances.[37]    Given the strength of the evidence against him, a motion to quash the indictment would have simply delayed the inevitable filing of another bill of indictment.    *See Merridith v. Cain*, 04-1227, 2006 WL 2054446, at *7 (W.D. La. Jun. 29, 2006), *report and recommendation adopted* 2006 WL 6358372 (W.D. La., Jul. 21, 2006).    That is, even if his trial counsel had successfully moved to quash, Schexnayder would merely have been subjected to re-indictment by a properly convened

---

[37]    Rec. Doc. 22-2 at 78-79; *Schexnayder v. State of Louisiana*, 08-WR-915 C/W 09-KH-159 (La. App. 5 Cir. Feb. 18, 2011.

grand jury, and there is no showing that the result would have been any different.    *See*

*Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) ("[W]e have no doubt that, if [petitioner]

had been successful in having his indictment quashed, the State of Louisiana would have

sought and obtained a second indictment"); *Pea v. Cain*, 14-0083, 2017 WL 1197872, at *13

(M.D. La. Feb. 28, 2017), *report and recommendation adopted* 2017 WL 1199740 (M.D. La.

Mar. 30, 2017).    Accordingly, his ineffective-assistance claim is without merit and cannot

excuse his procedural default.    *Romero*, 961 F.2d at 1183.    "Absent a showing of cause, it

is not necessary for the court to consider whether there is actual prejudice."    *Martin v.

Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Because Schexnayder has not satisfied the "cause and prejudice" test, this Court must

determine whether the application of the procedural bar would result in a fundamental

miscarriage of justice.    A petitioner makes such a showing only if he establishes as a factual

matter that he is "actually innocent" of the crime of conviction.    *Williams v. Thaler*, 602 F.3d

291, 307 (5th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995)); *McGowen v.

Thaler*, 675 F.3d 482, 499 (5th Cir.), *cert. denied*, 133 S.Ct. 647, 648 (2012) (citing *Finley v.

Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) and *Fairman v. Anderson*, 188 F.3d 635, 644 (5th

Cir. 1999).    When the petitioner has not adequately asserted his actual innocence, the

procedural default cannot be excused under the "fundamental miscarriage of justice"

exception.    *Glover*, 128 F.3d at 903.    Schexnayder has not made any showing that he is

actually innocent of the underlying conviction.    He has not demonstrated that any

miscarriage of justice will result from this Court's failure to consider his defaulted claim.

Accordingly, the grand-jury foreman discrimination claim is procedurally defaulted on federal review. Additionally, for the reasons expressed herein, his related ineffective-assistance claim does not warrant relief.

C. *Claims Raised in Original Federal Application*

In his original federal application, Schexnayder raised five claims that were properly exhausted on collateral review in the state courts. These claims included sufficiency of the evidence, suggestive identification, the trial court's failure to rule on his motion to proceed *pro se*, denial of access to the courts for failure to provide a copy of the trial transcript (previously addressed in this report), and ineffective assistance of counsel. This Court's prior rulings on those claims will be considered in light of the remand and reconsideration afforded on collateral review by the state courts, with the proper deference given to the state-court determination.

1. *Sufficiency of the Evidence*

Schexnayder asserted that the evidence was insufficient to support his conviction for second-degree murder. The claim was previously raised in his federal application and denied following de novo review. In denying the claim on reconsideration, the Louisiana Fifth Circuit conducted a detailed analysis after reviewing the evidence. The appellate court reasoned:

> First, relator argued that his conviction rested on insufficient evidence because of the lack of physical evidence linking him to the stabbing death of the victim. However, an eyewitness, Arthur Williams, testified that he saw the victim walking down the street when a car driven by relator, who Williams recognized from the area, stopped next to the victim. Williams also recognized relator's co-defendant, Dennis Morales, as the passenger in the car.

> According to Williams, relator exited the car, approached the victim, and appeared to punch him in the chest.   Williams tried to intervene, but retreated when relator threatened him.   After relator drove off, Williams discovered that the victim had been stabbed in the chest.   When the police arrived, Williams provided a physical description of the two men and the car. Shortly thereafter, the police pulled over a vehicle matching the description of the car. Williams was transported to that location and immediately identified the two men in the car as the perpetrators. Williams' girlfriend, Diane Bush, was unable to identify the perpetrators but she corroborated Williams' account of the instant offense.   Despite relator's challenge to the identification of him as the perpetrator, the jury made a credibility determination and found that Williams reliably identified relator.   *State v. Mussall*, 523 So.2d 1305, 1311 (La. 1988) (generally, one witness's positive identification is sufficient to support the conviction). Accordingly this claim lacks merit.[38]

The Louisiana Supreme Court denied relief without additional stated reasons.

Because a sufficiency-of-the-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Taylor v. Day*, 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    Schexnayder has not made the requisite showing in this case.

The applicable standard for reviewing claims of insufficient evidence was set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).    Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a

---

[38]  Rec. Doc. 22-2 at 74-75.

reasonable doubt." *Id.* at 319; *see also Williams v. Cain*, 408 F. Appx. 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).    Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations fall within the exclusive province of the jury. *United States v. Young*, 107 F. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).    A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).    In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993)).    Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

In this case, the evidence presented at trial was sufficient for a reasonable jury to

conclude that Schexnayder was the individual who stabbed the victim and that he had specific intent to kill or inflict great bodily harm.    Although he steadfastly disputes the credibility of the sole eyewitness and ultimate reliability of his testimony, the jury obviously chose to credit the eyewitness' testimony about the events he witnessed that night and his identification of Schexnayder as the perpetrator.    Further, while he may have been the only eyewitness at trial, Williams' testimony was corroborated in part by his girlfriend.    This Court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses.    *Jackson*, 443 U.S. at 319; *see also Schlup v. Delo*, 513 U.S. at 330.

When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.    For these reasons, Schexnayder cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### 2. Suggestive Identification

Schexnayder asserts that the trial court erroneously denied his motion to suppress the suggestive and unreliable identification in violation of his due-process rights.    He argued that the only witness identification of him was unreliable and that he should have been afforded a post-indictment physical lineup.    This Court previously considered the claim and denied relief.    In the earlier report, we set forth the relevant legal principles:

> The question of whether identification evidence is constitutionally admissible is a mixed question of law and fact and is not entitled to a presumption of

correctness. *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993). However, the factual findings underlying the determination of the admissibility of identification testimony are entitled to that presumption. *Lavernia v. Lynaugh*, 845 F.2d 493, 500 (5th Cir. 1988).

The Fifth Amendment affords defendants due process protection against evidence derived from unreliable identifications which are based on an impermissibly suggestive identification. *Sanchez*, 988 F.2d at 1389.    Thus, the court reviews the constitutionality of pretrial identification procedures utilizing a two-prong analysis. The first issue is whether the identification procedure was impermissibly suggestive, and if so, whether there was a substantial likelihood of irreparable misidentification. *Id*; *see also Manson v. Brathwaite*, 432 U.S. 98, 113-14, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977). If the identification procedure is not impermissibly suggestive, the inquiry ends. *Peters v. Whitley*, 942 F.2d 937, 939 (5th Cir. 1991).[39]

Applying the controlling law to the state district court's reasoned determination that, under the circumstances, the identification was not impermissibly suggestive (*i.e.*, the reliable identification procedure had occurred shortly after the crime occurred and under exigent circumstances), the Court found Schexnayder's claim was without merit and recommended denying relief.

On reconsideration, the state appellate court upheld its previous decision to deny the claim and flatly rejected his suggestion that the identification process was unduly suggestive because Schexnayder was denied a post-indictment physical lineup.    The appellate court concluded that "relator points to no legal grounds for such a request. LSA-C.Cr.P. art. 930.2. In fact, a pretrial identification is not a prerequisite to an in-court identification."    The court of appeal offered no further discussion regarding the alleged suggestive nature of the out-of-court pretrial identification.

---

[39]  Rec. Doc. 16, pp. 19-20.

The Court has no reason to alter its earlier conclusion that the out-of-court identification of Schexnayder was not impermissibly suggestive.    As Detective William Murret testified, and Williams himself confirmed at the suppression hearing, police officers did not influence his identification of Schexnayder, whom he witnessed stab the victim.[40] Three individuals were present at the time he viewed them—two males and one female, none of whom were handcuffed.    Furthermore, the identification was reliable.    The United States Supreme Court outlined several factors that may be considered when reviewing the reliability of a witness's identification: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification itself. *Manson v. Brathwaite*, 432 U.S. 98, 114-16 (1977); *Herrera v. Collins*, 904 F.2d 944, 947 (5th Cir. 1990).    Williams had already given a description of the two individuals involved and the vehicle itself to police at the crime scene.    He testified that he could see the individuals and the events that occurred that night clearly and with ample lighting.    He was transported to a nearby location and was able to identify the individuals, who were standing beside their vehicle, within 40 minutes of the crime without any assistance or suggestion from police.    He assured the police he was positive of his identification.[41]    On the record

---

[40] *See* State Rec., Vol. 1 of 11, Suppression Hearing Transcript (April 19, 1995), pp. 6-16 (Detective Murret); pp. 28-31 (Arthur Williams).

[41] State Rec., Vol. 1 of 11, Suppression Hearing Transcript (April 19, 1995), p. 29. *See also*, *generally*, State Rec., Vol. 2 of 11 (Cont. Hearings of May 4, 1995 and June 13, 1995).

presented, the Court will not disturb its earlier ruling that Schexnayder has not

demonstrated the state courts' rulings were contrary to, or an unreasonable application of,

Supreme Court law.

*3. Motion to Proceed* Pro Se

Schexnayder claims that the trial court failed to consider his motion to proceed *pro se*

and thus denied him the right to self-representation.    In this Court's earlier report, we

rejected the claim as follows:

> Schexnayder asserts that he filed a Motion to Proceed *Pro se* which was never
> adjudicated by the state trial court. He contends that because the court failed
> to rule on this motion, he was denied his constitutional right of self-
> representation.
>
> However, the record shows that this issue was not only presented to the court
> but ruled upon as well. The court permitted Schexnayder to submit a verbal
> motion regarding his right to proceed *pro se*. The court however denied his
> Motion to Dismiss and advised Schexnayder that if he wanted to assist Mr.
> Soignet as co-counsel, that he would be permitted to do so.
>
> The court further advised Schexnayder that anything that he would say could
> and would be used against him in the proceeding or any other proceeding.
> He was further advised that he had the right to counsel and that he had in fact
> been appointed counsel.
>
> Contrary to Schexnayder's assertion, the court ruled on his Motion to Proceed
> *Pro se* by ruling that he would be permitted to assist as co-counsel in the
> manner he so chose. Schexnayder's assertion that he was denied his
> constitutional right of self-representation is not supported by the record. His
> request for relief regarding his right of self representation should be denied.[42]

On reconsideration, the Louisiana Fifth Circuit reviewed and rejected the claim, stating:

> Relator further complains that the trial court refused to let him represent
> himself. According to relator, he expressed his desire to act as his own attorney

---

[42]  Rec. Doc. 16, pp. 22-23.

after counsel refused to let him testify at the motion to suppress hearing. Before trial, relator filed several *pro se* pretrial motions to dismiss counsel, including one motion to dismiss that was based on his claim of a conspiracy between his attorney and the prosecutor. At the hearing on these motions, the trial judge appointed stand-by counsel to represent relator. Ultimately the trial court denied relator's motions.

Although relator frames this claim as a violation of his right to self-representation, it appears that his underlying claim is rooted in his complaints that counsel refused to adopt relator's defense strategy. Given relator's failure to unequivocally exercise his right to self-representation, the trial court did not err when it did not terminate the services of relator's court-appointed attorney and allow relator to represent himself. This claim lacks merit.[43]

A criminal defendant has the constitutional right to waive his right to counsel and present his own defense. *Faretta v. California*, 422 U.S. 806, 817-22 (1975); *United States v. Long*, 597 F.3d 720 (5th Cir.2010). Waiver of that right must be knowing and intelligent, and the defendant must clearly and unequivocally request self-representation. *Long*, 597 F.3d at 723.

Schexnayder complained that the trial court did not rule on his motion to proceed *pro se*, but as this Court previously noted, the record contradicts his assertion. He filed multiple motions in an attempt to dismiss his appointed counsel, including an unsigned motion to proceed *pro se* and both verbal and written motions to dismiss counsel filed in February and June 1995.[44] During this same time frame, the trial court was holding hearings on his motion to suppress the identification over three different hearing dates (April 19, 1995, May 4, 1995 and June 13, 1995), in order to accommodate all of the

---

[43]  Rec. Doc. 22-2 at 76.

[44]  State Rec., Vol. 1 of 11.

witnesses.    However, on June 9, 1995, the trial court also heard Schexnayder's verbal motion to dismiss his defense counsel and have new counsel appointed to represent him. The minute entry for that date reflects that the verbal motion was denied.    On June 13, 1995, he filed a similar written motion to dismiss and have new counsel appointed to represent him.    On June 15, 1995, the trial court appointed stand-by counsel for the hearing and allowed Schexnayder to argue his position at length with respect to his dissatisfaction with appointed counsel.    Schexnayder's written motion cited a lack of communication and claimed defense counsel was ill-prepared for trial, which was set to take place in two days. Schexnayder also cited a conspiracy between the prosecution and defense counsel.    The trial court considered his arguments and denied the motion to dismiss.    In refusing to dismiss counsel, the trial court noted he had represented Schexnayder for eight months, but "at the eleventh hour you bring up the question of whether or not he has properly served you."    The trial court rejected the conspiracy theory as baseless and noted many of his concerns were merely hypothetical.    The trial court further advised he was in extremely competent hands, and "if you choose to assist him as co-counsel, the Court will allow you to do so."[45]

Here, the trial court did consider Schexnayder's motion to proceed *pro se* in light of his subsequent motions to dismiss appointed trial counsel, which did not clearly assert his right to self-representation, but rather sought to proceed with different counsel.    That is, he seems to have made a clear request to terminate his appointed attorney, but not a clear

---

[45]   State Rec., Vol. 2 of 11, Transcript of Hearing (June 15, 1995), pp. 23-26.

and unequivocal request to represent himself, as the appellate court indeed determined on reconsideration.    *See, e.g.*, *Moreno v. Estelle*, 717 F.2d 171, 174-75 (5th Cir.1983) ("[T]he right to counsel is in force until *waived*, [and] the right to self-representation does not attach until *asserted*.") (quoting *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir.1982) (en banc)) (emphasis in original).    Thus, while Schexnayder expressed dissatisfaction with his appointed counsel, he did not unequivocally state that he wished to represent himself without the assistance of counsel.    *See United States v. Conlan*, 786 F.3d 380, 391 (5th Cir. 2013) (rejecting assertion that defendant's numerous requests to replace various appointed counsel were "the functional equivalent" of a clear and unequivocal invocation of his right to self-representation).    In this case, the state court's decision was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.    28 U.S.C. § 2254(d).    As we previously concluded, Schexnayder is not entitled to relief on this claim.

### 4. *Ineffective Assistance of Counsel*

On federal habeas review, Schexnayder raised numerous ineffective-assistance-of-counsel claims.    The Court considered some of those claims on the merits, but also found a significant number of them had been technically procedurally defaulted and were not properly before the Court on federal habeas review.    This Court rejected Schexnayder's assertion that he exhausted all of his ineffective-assistance claims because he incorporated them by reference to other state-court filings in the supervisory writ application he filed with

the Louisiana Supreme Court on collateral review.     Even accepting his argument that he referenced and attached the lower-court brief, the mere reference without more does not inevitably suffice to exhaust the additional ineffective-assistance-of-counsel claims.     *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (affirming that a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).     A review of his Louisiana Supreme Court writ application reflects that Schexnayder set forth 17 specific "questions for review," including express grounds for alleged ineffective assistance of counsel, thereby giving the court no reason either to look beyond that application for additional claims for relief or to read through a lower court brief in support to find arguments that expound upon the specified questions for review presented.[46]     Moreover, the Louisiana Fifth Circuit's reconsideration under *Cordero* of his intermediate appellate court writ application (No. 98-KH-466) had no impact whatsoever on the procedural-default analysis employed by this Court.     Nor did Schexnayder reassert his ineffective-assistance claims in the Louisiana Supreme Court following that reconsideration.[47]     Therefore, the claims previously determined to be technically procedurally defaulted in this Court need not be revisited.

Schexnayder previously argued he received ineffective assistance with regard to numerous pretrial motions (*i.e.*, motion to quash, motion to dismiss trial counsel, motion to

---

[46]  State Rec., Vol. 8 of 11, La. S.Ct. Writ No. 98-KH-1460, pp. 8-11 ("Questions Presented for Review"; *see also* cover letter dated May 19, 1998.

[47]  State Rec., Vol. 10 of 11, Louisiana Supreme Court Writ No. 11-KH-541, p. 13.

suppress evidence and motion for new trial), and complained about trial counsel's investigation, conflict of interest, refusal to allow him to testify or to have a pretrial lineup. This Court conducted a merits review and determined that the ineffective-assistance claims were without merit.    On reconsideration of his intermediate writ application No. 98-KH-466, the Louisiana Fifth Circuit once again denied relief.    In denying the ineffective-assistance claims, the state appellate court reasoned:

> As an initial matter, the filing of motions is squarely within the ambit of trial strategy. *State v. Pendelton*, 96-367 (La. App. 5 Cir. 5/28/97), 696 So.2d 144, 156, *writ denied* 97-1714 (La. 12/19/97), 706 So.2d 450. Similarly, the time and manner of making objections is part of the trial strategy decision-making of the trial attorney. *State v. Simms*, 465 So.2d 769, 778 (La. App. 5 Cir. 1985). In addition, counsel's choices of which questions to ask on cross-examination fall well within the ambit of trial strategy. *See, e.g., State v. Brooks*, 94-2438, pp. 6-7 (La. 10/16/95), 661 So.2d 1333, 1337. Here, relator makes unsupported assertions about counsel's performance during trial. However, a review of the appellate opinion reveals that counsel filed motions to suppress the confession, identification, and evidence, actively objected to trial court rulings, as well as the prosecutor's remarks during closing and rebuttal argument. Further, relator's vague complaints about counsel's investigation do not support a claim of ineffective assistance of counsel. LSA-C.Cr.P. art. 930.2. Against this backdrop, relator has not demonstrated that the claimed errors rendered his trial globally unfair or the verdict generally suspect. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[48]

This Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002).    In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be

---

[48]  Rec. Doc. 22-2, p. 77.

"doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

Schexnayder alleged he received ineffective assistance of counsel in presenting the motions.[49] He repeatedly claimed to have a conflict of interest with trial counsel stemming from his disagreement with counsel's manner of investigation and strategic decisions made on his behalf. He also took issue with several other attorneys appointed to represent him at various times during the course of his criminal litigation, claiming they were not adequately prepared for the motion hearings. He disputes the manner in which counsel handled the pre-trial and post-trial motions and hearings essentially because he disagreed

---

[49] For an overview of the motions themselves, *see* Rec. Doc. 16.

with their strategic decisions, and believed that with more vigorous representation and better prepared counsel, he would have had a different favorable outcome for all of the proceedings including trial. However, his unsupported allegations fail to show that counsel performed deficiently or that he was prejudiced by counsels' conduct under the *Strickland* standard. The claimed conflict of interest with trial counsel was obviously rooted in Schexnayder's disagreement with how he investigated and presented the defense. However, the record shows that trial counsel conducted more than adequate discovery and investigation on his behalf in preparation of presenting a highly competent defense. Furthermore, trial and appointed counsel strongly advocated for his position during the hearings and offered reasonable arguments in support that advanced Schexnayder's written grounds for his motions. Certainly nothing in the record indicates that a different or more vigorous performance by counsel could have persuaded the trial court to grant the motions at issue. Nor is the fact that the motions were unsuccessful despite counsels' exercise of reasonable professional judgment indicative of deficient performance. *Strickland*, 466 U.S. at 699.

Schexnayder also claims that trial counsel was ineffective for not filing a motion to suppress with respect to his clothing. In his post-conviction relief application filed with the district court, Schexnayder advanced the following argument regarding counsel's actions surrounding the motion to suppress:

> Following the mistrial of June 21, 1995, the defendant filed his *pro se* Motion to Suppress Evidence due to the prejudicial and damaging effect that the cut-up clothing had placed upon the jury. Trial counsel had refused to have them suppressed and did not at any time move to suppress his clothing. The Trial

> Court denied the defendant's pro-se motion on July 10, 1995. Strangely, the Court must have reconsidered the defendant's Motion to Suppress Evidence because the clothing was not introduced into the second trial of July 17, 1995.[50]

As we stated before in denying this claim, Schexnayder's first trial ended in a mistrial. He does not contend the clothing was admitted at the second trial; in fact, he concedes it was not. Therefore, Schexnayder has not shown that he was prejudiced by trial counsel's omission. The claim is without merit.

Schexnayder also believes trial counsel should have requested a "proper" pretrial lineup. He disputes the propriety of Williams' out-of-court identification and alleges that Williams would have been unable to identify Schexnayder had a pretrial lineup been conducted as he requested. As the Louisiana Fifth Circuit previously stated when addressing his suggestive identification claim, he points to no legal grounds for such a request. Here, counsel was not ineffective in failing to pursue a motion he likely determined to be futile or meritless, and which would not have been successful or changed the outcome. *See Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also, Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."). The filing of pre-trial motions "falls squarely within the ambit of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (citing *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965)). Schexnayder has failed

---

[50] State Rec., Vol. 8 of 11, See Exhibits to Writ No. 98-KH-1460, Memorandum in Support filed originally in 94-6099 (24th JDC), pp. 27-28. *See also* Rec. Doc. 1, Petition at pp. 64-65.

to overcome the presumption that trial counsel's decision in this regard was strategic and entirely proper under the circumstances. *Strickland v. Washington*, 466 U.S. at 690-91. This claim was properly denied in the Court's previous report. Schexnayder is not entitled to relief on this claim.

Finally, the Louisiana Fifth Circuit on reconsideration addressed Schexnayder's contention that counsel refused to allow him to testify at trial.[51] In denying the claim, the Louisiana Fifth Circuit reasoned:

> Relator also claims that his attorney refused to let him testify at trial. However, a bare allegation that counsel prevented relator from testifying does not support a post-conviction claim that counsel interfered with relator's right to testify. *State v. James*, 05-2512 (La. 9/29/06), 938 So.2d 691. Although relator now complains that he wanted to testify so he could inform the jury that he was a perfect parolee who complied with the terms of his parole, counsel likely advised him not to testify in light of his prior conviction for aggravated rape. *State v. Johnson*, 619 So.2d 1102, 1111 (La. App. 4 Cir. 1993) (advice from counsel that defendant with prior convictions should not testify is generally considered reasonable advice). In addition, relator's desire to challenge the credibility of the state's eyewitness was accomplished through counsel's cross-examination of Mr. Williams. Against this backdrop, relator's claim appears more hindsight dissatisfaction with an unsuccessful strategy than a violation of his right to testify. The claim is without merit.

The Court will assume that Schexnayder argues both that he was denied the right to testify by trial counsel and that counsel was ineffective for advising him not to testify.

A defendant has a fundamental constitutional right to testify. *See Rock v. Arkansas*, 483 U.S. 44, 49–52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). When a defendant contends that

---

[51] In this Court's prior report and recommendation, we reasoned that he was not denied the right to testify at the suppression hearing; rather he declined to do so when given the opportunity. Even if the claim is construed more liberally to encompass trial, the claim is without merit for the reasons set forth herein.

trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel." *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002) (internal quotation marks and citation omitted). "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand." *Turcios v. Dretke*, Civ. Action No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *accord Jones v. Cain*, Civil Action No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, Civil Action No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007). In addressing the need for a petitioner to substantiate a claim that he was denied the right to testify by his counsel, the United States Seventh Circuit Court of Appeals has explained:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." ...
>
> [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary—and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify—to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood v. Clark*, 939 F.2d at 475-76; *accord Richthofen v. Cain*, Civ. Action No. 05-5701,

2008 WL 630477, at *44-45 (E.D. La. Mar. 7, 2008); *Curtis v. Cain*, Civ. Action No. 06-1676, 2008 WL 482849, at *8-9 (E.D. La. Feb. 13, 2008); *Baker v. Cain*, Civ. Action No. 06-2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); *White v. Cain*, Civ. Action No. 06-1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); *Turcios v. Dretke*, *supra*.    The United States Fifth Circuit Court of Appeals has cited favorably the rationale set forth in *Underwood*. *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999); *Silva-Garcia v. United States*, No. 10-cr-2224, 2012 WL 5464639, at *4 (S.D. Tex. Nov. 8, 2012).

The Louisiana Fifth Circuit's decision rested in part on Schexnayder's insufficient barebones allegation that he expressed a desire to testify and counsel refused.    As such, his mere assertion that defense counsel prohibited him from testifying at trial appears to be unsupported and conclusory.    More importantly, he has not established that his counsel's advice against testifying was objectively unreasonable.    A decision whether or not to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."    *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985); *accord United States v. Mullins*, 315 F.3d at 453; *Amos v. Cain*, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); *Curtis v. Cain*, 2008 WL 482849 at *10.    Such a matter is inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.    *Strickland*, 466 U.S. at 689.    Schexnayder alleged that by testifying he could have damaged Williams'

credibility by pointing out flaws in Williams' testimony.    In doing so, however, he would have been subjected to extensive cross-examination, including questions involving his prior criminal history, which could have undermined his own credibility.    Instead of having Schexnayder testify, defense counsel wisely sought to establish inconsistencies and flaws in the State's case based on his cross-examination of Williams and the other evidence at trial. Defense counsel strategically considered the potential harm that plainly could outweigh any benefit his testimony might have provided the defense, and Schexnayder acquiesced.    For these reasons, he has not established that counsel's advice against testifying was unreasonable.    Nor has he demonstrated that the outcome of the trial would have been any different but for counsel's decision to present a vigorous defense without his testimony.

For the foregoing reasons, Schexnayder has not demonstrated that the state court's decision rejecting these ineffective-assistance-of-counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    Accordingly, the Court finds no basis for altering its earlier recommendation for the denial of habeas relief.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Schexnayder's reopened application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.    28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[52]

New Orleans, Louisiana, this  11th  day of _____December_____, 2017.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[52] *Douglass* referenced the previously applicable 10-day period for the filing of objections.    Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.